JOHN WARNICK ADM'R. OF JOHN MORRISON, *vs.* PHILIP MICHAEL—*June* 1840.

Where a party files a bill for an injunction, to prevent judgment creditors from levying upon negro slaves, conveyed to the complainant by the judgment debtor, recently before the rendition of the judgments, he should, to entitle himself to relief, make out a clear and undisputed title, or a purchase for a fair and *bona fide* consideration, above suspicion or doubt in relation to its fairness.

APPEAL from *Allegany* County Court, as a court of equity.

On the 1st January 1838, *Philip Michael* the appellee, filed his bill, alleging, that he purchased on the 8th day of October 1837, of *James Hammill,* three negro slaves, for and in consideration of the sum of $1000; that *Hammill* executed a bill of sale for said slaves, duly acknowledged and recorded within four days; that the transaction was fair and *bona fide,* and the negroes delivered to complainant; that subsequent to this transaction, several judgments were obtained at law against said *Hammill;* executions sued forth, and wrongfully levied upon said negroes, upon pretence that they are the property of said *Hammill;* that the sheriff of *Allegany* county has advertised the same for sale; and that complainant fears they will be purchased by some southern trader, and removed beyond the jurisdiction of this court, entirely out of complainant's reach; that the said slaves are favorite servants, and he would regret to lose them; that the plaintiffs in the judgments at law had confederated with the said sheriff, (whom they had indemnified) in unlawfully seizing and trespassing upon the complainant's property, and that he is without adequate remedy at

law. PRAYER for an injunction to cease all further proceedings under the executions referred to; and for subpœna, &c. The bill of sale was exhibited with the bill. SHRIVER, J., ordered an injunction to issue.

The appellant answered the bill, alleging he was a judgment creditor of *Hammill;* that the sale of the negroes was a pretended and fraudulent one, to hinder and delay creditors, who obtained their judgments a few days after the said transfer; that the complainant has full remedy at law, and the injunction should not have been issued without a bond to indemnify the defendants.

At *April* term 1838, the county court (T. BUCHANAN, A. J.) dissolved the injunction for want of a bond; but on a bond being filed, another injunction was ordered and issued.

Several of the other creditors of *Hammill*, also answered the bill; a commission issued, and proof was taken, the effect of which is sufficiently stated in the opinion of this court.

At April term 1839, the county court ( BUCHANAN, C. J., and SHRIVER, A. J.,) ordered the injunction to be made perpetual, and the negroes to be delivered to the complainant. From which decree, *Warnick* appealed.

The cause was argued before STEPHEN, ARCHER, CHAMBERS, and SPENCE, J.

PERRY for the appellant contended, that the decree of the court below ought to be reversed, for the following reasons:

*First*, because by the act of Assembly, 1793, chap. 75, sec. 3, it is provided, that in all cases, where injunction shall be applied for, to *stay proceedings at law, a bond must be executed before injunction shall be granted.* In this case the order for injunction was granted on the 29th of December, 1837, and injunction was issued on the first day of January, 1838; the injunction bond is dated 24th day of April 1838, and was filed on the first of May 1838, at least three months after the injunction was issued. The answer of *Warnick* having also been filed April 5th 1838, at least one month before filing the

bond, and its date. The language of the act of Assembly is imperative, "that bond shall be executed to the plaintiff before injunction granted."

*Warnick's* answer sets forth the requirements of the law, and insists on the dismissal of the bill, on account of bond now being executed. The complainant being bound to establish that he had a title to relief, at the time of filing his bill, or if he relied on matters subsequent, he ought to have filed a supplemental bill; see *4th Russell*, 355, *cited in 2 Chitty's Equity Digest, page* 1032. It was too late, after the answer of *Warnick*, for the complainant to file his bond, without notice to those who were to be affected by it. The answer of *Warnick* exhibited matter, showing clearlv that the complainant was not entitled to the compulsive process of the court. And if filing a bond would give him a right to an injunction, should not notice of such an application to the court have been given to the defendant, *Warnick*, to show the insufficiency of his bond, or that in point of law he could not *then* do what the act of Assembly requires should be done before injunction granted. *Warnick* was in court, and had answered, and should he not have been heard? If he was not properly in court, the proceedings of the court being wholly wrong, then we suggest whether there should not have been an answer to the injunction and subpœna, issued on the first of May 1838, which is returned, summoned and enjoined? If so, the decree of the court below was premature,—all defendants being required to answer before a decree can be passed. A second bill of injunction will not be granted, after a former bill dismissed, without affidavit of some particular hardship, and that there is no omission on the part of the complainant. If the decree of the first May 1838, is to be considered as having the effect of a dismissal, or of a dissolution of the first bill or injunction, then there should have been affidavit of hardship, and that there was no omission on the part of the complainant, to entitle him to a second injunction. *See Mayfield vs. Hawkins, Martin* 27*th; West vs. Coke, 1st Murp.* 191, *cited in 3d American Digest, page* 105, *Nos.* 221, 222. If it is to be

considered as a continuance of the first injunction, and not as set aside, then the order of injunction of the 1st May 1838, cannot have the effect of remedying the want of a bond in the first instance. The language of the act of 1793, *absolutely requires the execution of a bond,* in such penalty as the Chancellor shall prescibe, *"before* injunction shall be granted."

*Secondly,* The appellants contend that the complainant did not entitle himself to the injunction issued on the first of May 1838, not having executed a bond, which protected the plaintiffs in the execution against the second injunction. The bond of *Michael's,* the complainant, was executed on the 24th day of April 1838, the first injunction having been previously issued on the 29th of Dec., 1837. The bond recites as follows: "that whereas the above bounden *Philip Michael, hath* obtained an injunction to prevent the sale of certain negroes," &c., the condition of the bond provides, "that if the said *Philip Michael* shall prosecute the *said writ* of injunction with effect." The recitation and condition of the bond show that it had relation to the then existing injunction, which had been issued on the 29th of December 1837, and could be no protection to the defendants, on account of the injunction of the *first of May* 1838. The bond having no reference to the injunction subsequently issued. If the act of Assembly requires a bond before an injunction shall be granted, and the object of the court below, by the decree of the first of May 1838, was to commence anew, (being an original proceeding,) surely the bond should have relation to the injunction to be granted. The *first injunction to which the bond alone had reference,* having been rescinded and dissolved, the complainant filed no bond in compliance with the requirement of the act of Assembly of 1793, he therefore appeared in court upon the injunction of the first of May, as if no bond whatever had been executed.

*Thirdly,* The appellant contends, that the cause having been set down for hearing on bill and answer, without a replication, the answer must be taken as conclusive proof of the facts set up by way of defence, and alleged. The final decree was passed

on the 26th day of April 1839, and on the 27th day of April 1839, *one day* after the final degree, without permission of the court, the complainant filed a replication. This the court will see by a reference to the record. It will not, surely, be contended that this replication, thus filed, after decree passed, without the consent of the court, or the defendants, can avail them in the Court of Appeals. In *second Maddox's Chancery Practice, page* 350, it is laid down, that where, by mistake, a replication has not been filed, and yet witnesses have been examined, the *court have permitted* the replication to be filed *nunc pro tunc.* Sustaining the same point, *see also, Harrison's Chancery, vol.* 1*st, page* 427. If the replication should be good for any purpose, it cannot be to let in evidence, not being by permission of the court, and not being filed *nunc pro tunc.* The defendants have been, at least, deprived of an advantage in regard to the costs, if the replication should be now entertained. To have filed a replication at all, the court would, surely, have imposed terms upon the complainants had it been before them. It has been decided, that when a cause is brought to a hearing on bill and answer, the answer is to be taken for true in all points, and even where the defendants states that he believes and hopes to be able to prove certain matters, they are to be considered as proved. *See* 7*th John. C. R.* 217, *cited in* 4*th American Digest,* 105; *see also, to the same point, Gresley's Equity Evidence, page* 19; 2*nd Cowen,* 118; 1*st Bibb,* 277; 5*th Rand.,* 557; 1*st Peters, C. C.* 351; 1*st Washington,* 162.

*Fourthly,* It is an established principle, that no decree can be passed without the answer of all the defendants.

*Lloyd Lowndes,* one of the firm of *L. & R. T. Lowndes,* has never answered the bill. The answer *R. T. Lowndes,* describing himself as one of the firm of *L. & R. T. Lowndes,* and not professing to be the answer of the firm *L. & R. T. Lowndes,* cannot avail against *Lloyd Lowndes.* In the case of *Chime vs. Hale,* 1*st Mumf., cited in* 3*rd American Equity Digest, page* 4, it is decided, "that the answer filed in the name of one of these executors, the decree being in favor of the

plaintiff, was not to be taken as their joint answer, notwithstanding the clerk in the transcript says, *they* appeared by their counsel, and filed *their* answer, and no steps were taken to compel an answer from them." In *Prince vs. Hayden*, 3rd *Young & Ger.*, *page* 190, *cited in American Equity Digest*, *vol.* 3rd, *pages* 457 *and* 457, it is decided that a motion by one partner to dissolve an injunction would not be entertained, his copartner, the other defendant, not having answered. In *Law Library*, *vol.* 3rd, *margin*, *p.* 154; *Carey* on Partnership, says, "the only points to be noticed under this head (being suits in equity against partners) relating to the practice; in all other respects the relief to be obtained by *bill in equity against partners, the same as individuals.* In general, it is necessary to make all the partners defendants in equity." *Collyer on Partnership*, *page* 240, *note* 88, "a service of summons on one partner, and judgment upon a reference to arbitration, it was held that such judgment was void, as to the partners on whom the process was not served." Upon a full examination of the authorities accessible to me, I have not been able to find a solitary case, in which it has been decided that the answer of one partner has been held valid and available against his copartner. The decree in this case, binding *Lloyd Lowndes*, is clearly erroneous.

ALEXANDER also for the appellants, in addition to what had been urged, insisted—

1. That the testimony in the cause fully proves, that the bill of sale from *Hammill* to *Michael*, was made without consideration, fraudulently, and with intent to hinder the recovery of *Warnick's* claim.

2. That the question of *fraud* was properly triable at law, and ought not to have been determined in equity, at the suit of a party to that fraud, especially as the complainant had failed to show, that he could not obtain adequate relief at law.

*Warnick* is the only appellant. If he is not confined to such errors in the decree as affect him injuriously, it is further insisted:

3. That the cause as between *Michael* and *Lowndes*, was presented on bill and answer, and the answer of *Lowndes* denying all equity in the bill, the injunction as against him at least, ought to have been dissolved.

4. That if the cause is to be argued as on bill, answer, replication and issue, the proofs in the cause will fully show, that the appellees title to the negroes in controversy, originated in fraud.

5. That the question of fraud was properly triable at law, and the appellee claiming under an impeached instrument, had · no right to call upon a court of equity to determine this question, especially as it does not appear, that his remedy at law would not have been entirely adequate.

Price for the appellee.

Under the statute 13 *Elizabeth*, fraud in the grantor alone, will not avoid the deed. *Astor vs. Wells*, 4 *Wheat*. 466. 15 *John*. 585.

Archer, J., delivered the opinion of the court.

The complainant in this case, has failed to shew any possession of the negroes in controversy, or that his bill of sale was recorded according to the requisitions of the act of 1729, ch. 8. He has therefore failed to show any title *to the slaves*, as the foundation for the exercise of the restraining power of a court of equity.

We might under the act of 1832, remand this cause to the court from which it came, without either affirming or reversing, in order that further evidence on this subject might be taken. But we believe substantial justice would be better effected, by reversing the decree; and leaving the parties to their legal remedies. A complainant to succeed *in such a case, where slaves are in controversy*, should make out satisfactorily to the court, an ownership, clear and undisputed; or a purchase for a fair, and *bona fide* consideration, above suspicion, or doubt in relation to its fairness. Such we apprehend is not the case upon the testimony in this record; and there is quite as much to impeach, as to support the transfer, upon the evidence offered by

the defendant, all of which we have considered in the cause; none of it having been objected to, in the court below.   How far it would have been in the power of the complainant, to have shown his title to be good and untainted with any fraud, by rebutting the evidence offered by the defendant, and the adduction of other evidence, we know not; but the record shows no effort on the part of the plaintiff to support any portion of his cause by testimony.   Entertaining these impressions, we will decree a reversal of the court's decree, and a dissolution of the injunction with costs.

DECREE REVERSED AND INJUNCTION DISSOLVED.